1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6              FOR THE DISTRICT OF ARIZONA
7
8   United States of America,          )   CR 10-01350-TUC-JMR(HCE)
                                        )
9              Plaintiff,               )   **REPORT AND RECOMMENDATION**
                                        )
10  vs.                                 )
                                        )
11                                      )
    Ricardo Salazar-Aguilar,            )
12                                      )
               Defendant.               )
13                                      )
    _____)
14

15          Pending before the Court is Defendant's Motion To Dismiss Indictment (Doc. 15).
16  The Government filed a Response To Defendant's Motion To Dismiss Indictment (Doc. 19).
17  Defendant's Motion came on for hearing on November 10, 2010. Mr. Tarik Sultan, Esq.,
18  (hereinafter "Sultan at p. _") testified on behalf of Defendant as an expert. Border Patrol
19  Agent and Special Operations Officer Roy Gonyea (hereinafter "Gonyea at p. _") testified
20  on behalf of the Government.
21          Admitted into evidence were: (1) Government Exhibit 1: Form I-213; (2) Government
22  Exhibit 2: Form I-851; (3) Government Exhibit 3: I-851A; (4) Government Exhibit 4: Form
23  I-205; (5) Government Exhibit 5: Form 871; (6) Government Exhibit 6: Washoe County
24  Plea Agreement; (7) Government Exhibit 7: Washoe County Transcript; (8) Government
25  Exhibit 8: Washoe County Judgment; (9) Government Exhibit 9: Washoe County State's
26  Opposition; (10) Defense Exhibit 20: Washoe County Judgment; (11) Defense Exhibit 21:
27  Motion For Sentencing Re-hearing filed in Washoe County; (12) Defense Exhibit 22: Reply
28  filed in Washoe County; (13) Defense Exhibit 23: Washoe County Transcript; (14) Defense

1  Exhibit 24: Washoe County Amended Judgment; (15) Defense Exhibit 25: Form I-213; (16)

2  Defense Exhibit 26: Notice of Intent to Issue Final Administrative Order; (17) Defense

3  Exhibit 27: Final Administrative Order; (18) Defense Exhibit 28: Form I-205; (19) Defense

4  Exhibit 29: EARM Case Summary; (20) Defense Exhibit 30: Affidavit of Defendant; and

5  (21) Defense Exhibit 32: Affidavit of Mark Nissenbaum.

6        Transcript of the November 10, 2010 evidentiary hearing was ordered by the

7  Magistrate Judge and filed on November 19, 2010 (Doc. 28). The transcript is forwarded to

8  the District Court for review.

9        After consideration of Defendant's Motion, the Government's Response, testimony

10  given, exhibits introduced into evidence, and argument of counsel, the Magistrate Judge

11  recommends that the District Court grant Defendant's Motion To Dismiss Indictment (Doc.

12  15).

13  **I. PROCEDURAL AND FACTUAL BACKGROUND**

14      **A.   Indictment**

15        Defendant is charged with: being an alien who, on or about May 9, 2010, at or near

16  Naco, in the District of Arizona, entered or was found in the United States of America after

17  having been previously denied admission, excluded, deported, and removed therefrom at or

18  near San Ysidro, California on September 30, 2009, and did not obtain the express consent

19  of the Attorney General or the Secretary of the Department of Homeland Security to reapply

20  for admission thereto, in violation of 8 U.S.C. §1326. (Doc. 6).

21      **B.   Factual Background**

22        Defendant was born on September 29, 1998 in Mexico, was brought to the United

23  States when eight months old, and has lived in this country until September 30, 2009 when

24  he was deported to Mexico. (Defense Exhibit 25).  Defendant speaks fluent English.

25  (Defense Exhibit 30).

26        On July 30, 2009, Defendant pled guilty in the Second Judicial District Court of the

27  State of Nevada in and for the County of Washoe, to the gross misdemeanor of Conspiracy

28  to Commit Burglary in violation of Nevada Revised Statute (hereinafter "N.R.S.")

§§205.060(1)(Burglary), 195.020(Principals), and 199.480(Penalties). (Defense Exhibit 20).

Burglary is defined as:

> A person who, by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or house trailer, airplane, glider, boat or railroad car, with the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses, is guilty of burglary.

N.R.S. §205.060(1). A principal is defined as:

> Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether the person directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him or her.

N.R.S. §195.020. Defendant was sentenced, *inter alia,* to a suspended one-year jail sentence and two years of probation by Nevada State District Judge Janet Berry (hereinafter "Judge Berry"). (Defense Exhibit 20).

Defendant self-reported to Immigration and Customs Enforcement (ICE) on September 16, 2009, at which time he was arrested. (Defense Exhibit 25). Defendant requested a hearing before an immigration judge, but Deportation Officer Jill Ellis (hereinafter "DO Ellis") determined that Defendant would instead be processed by administrative removal. (*Id.*). ICE Supervisory Detention and Deportation Officer Curtis Hemphill issued a Notice of Intent to Issue a Final Administrative Removal Order (hereinafter "Notice of Intent") pursuant to 8 U.S.C. §1228(b). (Defense Exhibit 26). Therein, it is alleged that Defendant is an alien who was not lawfully admitted for permanent residence at the time proceedings were commenced. (*Id.*; 8 U.S.C. §§1227(a)(2)(A)(iii), 1228(b)(2)). Furthermore, therein it is alleged that Defendant was convicted of an aggravated felony defined as a burglary offense for which the term of imprisonment is at least one year,

1   or a conspiracy to commit a burglary offense was the term of imprisonment is at least one

2   year. (Defense Exhibit 26; 8 U.S.C. § 1101(a)(43)(G) and (U)[1]).

3        The Notice of Intent advised Defendant of his right to be represented by counsel, at

4   no cost to the Government, and if he wished to have legal advice but could not afford it, he

5   could contact legal counsel from the list of available free legal services provided. (Defense

6   Exhibit 26; *see* 8 CFR § 238.1(b)(2)(iv)). Defendant was advised that he had to respond to

7   the charges in writing to the Department of Homeland Security within 10 days of service of

8   the Notice of Intent. (Defense Exhibit 26; 8 CFR § 238.1(c)(1)). Defendant was advised that

9   in his response, he could for good cause: request an extension of time; request an opportunity

10  to review the Government's evidence; rebut the charges with supporting evidence; or admit

11  deportability. (Defense Exhibit 26; 8 CFR § 238.1(c)(1), (2)(I), (ii)). Defendant was

12  specifically advised of his:

13          right to remain in the United States for 14 calendar days so that
    you may file a petition for review of this order to the appropriate

14  U.S. Circuit Court of Appeals[2] as provided for in section 242
    of the Act, 8 U.S.C. 1252. You may waive your right to remain

15  in the United states for this 14-day period. If you do not file a
    petition for review within this 14-day period, you will still be

16  allowed to file a petition from outside of the United States so
    long as that petition is filed with the appropriate U.S. Circuit

17  Court of Appeals within 30 calendar days of the date of your
    final order of removal.

18  (*Id.*). The Notice of Intent Certificate of Service, dated September 21, 2009, indicates that

19
20  DO Ellis personally served and determined that the person served was Defendant and that

    she explained the Notice of Intent to Defendant in English. (*Id.*).

21
22       The Notice of Intent Certificate of Service set forth various options for action by

23  _____

24      [1]Under the Immigration and Nationality Act (hereinafter "INA") the definition of
    "aggravated felony" includes: "a theft offense (including the receipt of stolen property) or

25  burglary offense for which the term of imprisonment is at least one year" 8 U.S.C.
    §1101(a)(43)(G)(footnote omitted); or "an attempt or conspiracy to comment an offense..."

26  such as that described in section 1101(a)(43)(G).  8 U.S.C. § 1101(a)(43)(U).

27
        [2]The Court will presume, for purposes of this Report and Recommendation, that the

28  appropriate U.S. Circuit Court of Appeals is the Ninth Circuit.

1    Defendant which he could select by checking a box next to the particular option desired.
2    (Defense Exhibit 26).  In this particular case, Defendant did not check off the box: "I Wish
3    to Contest and/or to Request Withholding of Removal." (*Id.*). Defendant did not check off
4    the box: "I contest my deportability because (Attach any supporting documentation)." (*Id.*)
5    Defendant did check off the box: "I Do Not Wish to Contest and/or to Request Withholding
6    of Removal." (*Id.*). Defendant did check off the box: "I admit the allegations and charge in
7    this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for
8    any form of relief from removal. I waive my right to rebut and contest the above charges. I
9    do not wish to request withholding or deferral of removal. I wish to be removed to [*in script*]
10   Mexico." (*Id.*). Defendant did check off the box: "I understand that I have the right to remain
11   in the United States for 14 calendar days in order to apply for judicial review. I do not wish
12   this opportunity. I waive this right." (*Id.*). Defendant signed the Notice of Intent Certificate
13   of Service on September 21, 2009 at 11:30 a.m. (*Id.*).

14        Defendant opines that he checked off boxes on the Notice of Intent Certificate of
15   Service, served by DO Ellis, indicating that he wanted to contest his removal. (Defense
16   Exhibit 30). Defendant further opines that DO Ellis rebuked him and discouraged him from
17   contesting his removal and petitioning for judicial review, and she checked the boxes
18   indicated in Defense Exhibit 26, printed his name, and had him sign it. (*Id.*)

19        On September 22, 2009 at 1:20 p.m., a Final Administrative Removal Order was
20   entered alleging Defendant was convicted of an aggravated felony as defined in 8 U.S.C.
21   §1101(a)(43)(G) and (U), and consequently, is a deportable alien pursuant to 8 U.S.C.
22   §1227(a)(2)(A)(iii). (Defense Exhibit 27). A Warrant of Removal/Deportation was entered
23   on September 22, 2009. (Defense Exhibit 28).

24        On September 29, 2009, Defendant's counsel in the Nevada state court criminal
25   proceeding, Mr. Edward Reed, filed a Motion For Sentencing Re-hearing, petitioning Judge
26   Berry to reduce Defendant's sentence to less than one year to enable Defendant an
27   opportunity to re-enter the United States or avoid deportation altogether. (Defense Exhibit
28   21). Judge Berry was also informed that Defendant's immigration counsel, Mr. Richard

Fleischer, would be filing an emergency request before the Immigration Court that day to stay his deportation pending a decision by the state court and a hearing in the Immigration Court, provided that the Motion For Sentencing Re-hearing was set for a hearing. (*Id.*). On September 30, 2009, Defendant was deported to Mexico. (Defense Exhibit 28). On December 8, 2009,  Judge Berry entered an Amended Judgment *nunc pro tunc* to July 30, 2009, amending Defendant's sentence to a suspended 364 days in jail. (Defense Exhibit 24).

At the November 10, 2010 hearing before this Court, defense expert witness with regard to immigration and nationality law, Mr. Tarik Sultan, testified that it was plausible that Defendant would have been granted voluntary departure rather than removal had he been given an opportunity to seek such remedy before an immigration judge. (Sultan at pp. 8, 10-11). The basis for Mr. Sultan's opinion is that Defendant was not convicted of an aggravated felony under Ninth Circuit case law and the amended suspended sentence was for less than one year. (*Id.* at pp. 13-14). Voluntary departure would have been more favorable to Defendant because the question of his admissibility would not be an issue if Defendant sought to return to the United States. (*Id.* at p. 13). Mr. Sultan agrees that it would have been in the immigration judge's discretion to grant voluntary departure. (*Id.* at p. 14).

Additional equities Mr. Sultan would have presented to an immigration judge warranting voluntary departure would have been: (1) no other criminal history in Defendant's background; (2) Defendant had been in the United States since he was eight months old; (3) Defendant had attended schools in the United States through the eleventh grade and obtained a GED; (4) Defendant's entire family lives in the United States; (5) Defendant's sentence had been suspended, resulting in no incarceration and thus he was not a danger to the community; (6) Defendant's self-report to ICE evidenced good faith that he was not a flight risk; and (7) because Defendant was contemplating marriage to his U.S. citizen girlfriend, whether married in or outside of the United States, Defendant could be sponsored by her for admission into the United States under INA § 212(h) and 8 U.S.C. § 1182(h). (*Id.* at pp. 14-15, 33-34). Mr. Sultan opines that Defendant should not have to suffer a lifetime bar as an

aggravated felon.[3]  (*Id.* at p.16).  Furthermore, had Defendant been in removal proceedings before an immigration judge, Defendant could have applied for voluntary departure after the December 8, 2009 amended suspended sentence of less than one year, thus enhancing the possibility that Defendant would have been allowed to voluntary depart. (*Id.* at pp. 18-19).

## II. ANALYSIS

Defendant is charged with Illegal Re-entry After Deportation, in violation of 8 U.S.C. §1326. Defendant may challenge the legality of the underlying administrative removal order. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987).  In such a criminal proceeding, to challenge the validity of his removal on September 30, 2009, Defendant must demonstrate, in the conjunctive[4], that:

> (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; *and*
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. §1326(d)(emphasis added).

### A.    Exhaustion of Administrative Remedy

The Ninth Circuit has been clear that the "exhaustion requirement of 8 U.S.C. §1326(d)...'cannot bar collateral review of a deportation proceeding when the waiver of the right to an administrative appeal did not comport with due process.'" *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1048 (9th Cir. 2004) (*quoting United States v. Muro-Inclan,* 249 F.3d 1180, 1182 (9th Cir. 2001)).  Further, "[a] waiver of the right to appeal a removal order does not comport with due process when it is not 'considered and intelligent.'" *Id.*  In cases where the defendant's waiver of the right to appeal a removal order does not comport with due process, the defendant is exempted from the exhaustion requirement of section 1326(d)(1).  *Id.* at 1050.

---

[3]*See* INA §212(a)(9)(A); 8 U.S.C. §1182(a)(9)(A).

[4]Defendant must satisfy all three in order to prevail. *See United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2nd Cir. 2002).

Immigration and Customs Enforcement has the discretion to expedite removal of an alien convicted of an aggravated felony, before itself without an adversarial hearing before an immigration judge.[5] *See* INA §238; 8 U.S.C. §1228(a)(3). Defendant asked for a hearing before an Immigration Judge. (Defense Exhibit 25). Herein, the ICE hearing officer opted to proceed with an expedited removal proceeding under the mistaken belief that Defendant had been convicted of an aggravated felony punishable by at least one year of incarceration. The statute contains a conclusive presumption of deportability:

> An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States.

INA § 238(c); 8 U.S.C. 1228(c); *see also* 8 CFR §§238.1(b)(1)(iv). Upon determination by an ICE hearing officer of alien status and conviction of an aggravated felony, a Notice of Intent issues advising the non-U.S. citizen that he/she has 10 calendar days within which to respond in writing to the Notice of Intent. *See* 8 CFR §§238.1(c)(1) and (c)(2)(i), 1238.1(c)(1) and (c)(2)(i). The Notice of Intent must state factual allegations and conclusions of law, i.e., the basis for deportability as an aggravated felon. 8 CFR §§238.1(b)(2)(i), 1238.1(b)(2)(i). The Notice of Intent must also advise the non-U.S. citizen of the right to counsel at no cost to the Government and the right to examine the Government's evidence. (*Id.*). The written response can rebut that the conviction is an aggravated felony offense. *See* 8 CFR §§238.1(c)(2)(i), 1238.1(c)(2)(i); *see also* INA §101(a)(43); 8 U.S.C. §1101(a)(43).

If in the rebuttal, the ICE hearing officer finds a genuine issue of material fact, i.e., the offense is not an aggravated felony, the ICE hearing officer may initiate removal proceedings before an immigration judge. 8 CFR §§238.1(d)(2)(ii) and (iii), 1238.1(d)(2)(ii) and (iii). On the other hand, if no genuine issue of material fact is found, a designated Department of Homeland Security (hereinafter "DHS") officer, other than the issuing ICE hearing officer, renders a Final Administrative Removal Order. *See* 8 CFR §§238.1(d),

---

[5]In expedited removal proceedings, the non-U.S. citizen appears before an ICE deportation officer instead of proceeding to a hearing before an immigration judge. *See* 8 CFR §238.1(d).

1238.1(d). The Final Administrative Removal Order must be based on clear, convincing, and unequivocal evidence of deportability. *See* 8 CFR §§238.1(d)(1) and (d)(2)(i), 1238.1(d)(1), (d)(2)(i).

Defendant argues that on September 17, 2009, when the ICE hearing officer entered its Notice of Intent, the offense of Conspiracy to Commit Burglary as defined under Nevada law was then not an aggravated felony under then Ninth Circuit case law. *See United States v. Aguila-Montes de Oca*, 553 F.3d 1229 (9th Cir. 2009) (hereinafter "*Aguila-Montes de Oca I*").[6] The reasoning in *Aguila-Montes de Oca I* is that the crime of burglary, lacking the element of unlawful or unprivileged entry, "cannot categorically constitute a conviction for the generic [U.S.S.]Guidelines offense of burglary of a dwelling." *Aguila-Montes de Oca I*, 553 F.3d at 1233. Thus, regardless of the precedential value of *Aguila-Montes de Oca I* today, at the time of Defendant's immigration proceedings, the case was the law in the Ninth Circuit.

Defendant also argues that the Nevada State District Court's *nunc pro tunc* order of December 8, 2009, amending Defendant's sentence to a suspended jail term of less than one year, was retroactive to July 30, 2009. The *nunc pro tunc* order was issued sixty-nine days after Defendant had been deported on September 30, 2009, and there is nothing before this Court that either Defendant's state court counsel, Mr. Edward Reed, or immigration counsel, Mr. Richard Fleischer, intervened and filed an emergency request to stay Defendant's deportation.[7] (*See* Defense Exhibit 21).

Defendant argues that had he not been mistakenly treated as an aggravated felon under

---

[6]On February 3, 2010, in *United States v. Aguila-Montes de Oca*, 594 F.3d 1080 (9th Cir. 2010), the Ninth Circuit Court of Appeals ordered that "[u]pon the vote of a majority of nonrecused active judges, it is ordered that this case be reheard en banc pursuant to Circuit rule 35-3. The three judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit."

[7]*Compare In re Song*, 23 I. & N. Dec. 173, 2001 WL 1030900 (BIA 2001)(*pending* appeal, respondent's one-year sentence modified to 360 days, rendered offense "non-aggravated" and removal proceedings were terminated).

the INA, "he would have been eligible to apply for the relief of pre-hearing voluntary departure." (Defendant's Motion, p. 12). Under 8 U.S.C. § 1229c(a)(1), an immigration judge in his or her discretion may "permit an alien voluntarily to depart the United States at the alien's own expense..., in lieu of being subject to [formal removal] proceedings...or prior to the completion of such proceedings, if the alien is not deportable under [8 U.S.C. §] 1227(a)(2)(A)(iii) or section 1227(a)(4)(B)...." 8 U.S.C. §1229c(a)(1).[8]

In light of *Aguila-Montes I,* the Court assumes arguendo, the correctness of Defendant's claim that his conviction for Conspiracy to Commit Burglary was not an aggravated felony, because it did not have an "unlawful or unprivileged entry" element.

Defendant asked that his matter be heard by an immigration judge. Instead, he placed in expedited removal proceedings before an ICE deportation officer. By placing Defendant in expedited removal proceedings, ICE determined that Defendant was "conclusively presumed to be deportable from the United States" for an aggravated felony. INA §238(c); 8 U.S.C. § 1228(c). Moreover, because a non-U.S. Citizen who has been convicted of an aggravated felony does not qualify for cancellation of removal or voluntary departure", 8 U.S.C. §§ 1229b(a)(3), 1229c(a)(1), Defendant was never informed about his eligibility for voluntary departure.

It is well-established in the Ninth Circuit that where the record contains an inference that the defendant is eligible for relief from deportation, he must be advised "'of the possibility and give[n]... the opportunity to develop the issue.'" *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)(*quoting Moran-Enriquez v. INS,* 884 F.2d 420, 422-23 (9th Cir. 1989)); *see also Ortiz-Lopez,* 385 F.3d at 1204 (IJ's failure to inform defendant that he was eligible for relief from removal in the form of voluntary departure constituted a due

─────────────────────

[8]Had Defendant "departed voluntarily instead of being removed, he would not now be..." facing prosecution under 8 U.S.C. § 1326 for illegal reentry following removal, because he would never have been removed. *United States v. Ortiz-Lopez,* 385 F.3d 1202, 1204 n.1 (9th Cir. 2004). Moreover, Defendant would not suffer a lifetime bar to admissibility as an aggravated felon. *See* Sultan at p.16; INA §212(a)(9)(A); 8 U.S.C. § 1182(a)(9)(A).

process violation); *Ubaldo-Figueroa,* 364 F.3d at 1049; *United States v. Arce-Hernandez,* 163 F.3d 559, 563 (9th Cir. 1998).[9]  Not only is "the requirement that the IJ inform an alien of his or her ability to apply for relief from removal...'mandatory,'...[but] [f]ailure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceeding." *Ubaldo-Figueroa,* 364 F.3d at 1050 (*quoting Muro-Inclan,* 249 F.3d at 1183).  There is no reason why a deportation officer rendering a removal determination should be held to a less stringent standard than an IJ.[10]

---

[9]"[T]he Ninth Circuit has not distinguished between voluntary departure under section 1229(c)(a)(1) and other statutory provisions in the context of an IJ's obligation to inform aliens of their eligibility to apply for voluntary departure...." *United States v. Lopez-Menera,* 542 F.Supp.2d 1025, 1028 n.2 (N.D. Cal. 2008) (*citing United States v. Basulto-Pulido*, 219 Fed.Appx. 717 (9th Cir. Jan. 25, 2007) (unpublished); *United States v. Nungaray-Rubalcaba,* 229 Fed. Appx. 436 (9th Cir. Apr. 10, 2007) (unpublished).  *See also Ortiz-Lopez,* 385 F.3d 1202 (in addressing the IJ's failure to advise about eligibility for voluntary removal, the court relied on decisions which addressed an IJ's failure to inform about relief from removal under INA §212–a statutory provision providing for relief from removal that is different from the voluntary removal statute).

[10]The Court recognizes that, correctly applied, expedited removal proceedings before a deportation officer under 8 U.S.C. §1228(a)(3) necessarily involve only aliens who stand convicted of an aggravated felony.  Thus, advisement about eligibility for voluntary removal would only be triggered where the deportation officer mistakenly believed the non-U.S. citzen was convicted of an aggravated felony.  However, failure to inform a non-U.S. citizen about eligibility for relief from deportation when the record contains an inference that he is eligible cannot be excused merely by virtue of the fact that the deportation officer mistakenly believed that the non-U.S. citizen stood convicted of an aggravated felony.  This result is no different from what occurs with immigration judges in the Ninth Circuit.  *See United States v. Pallares-Galan,* 359 F.3d 1088, 1096 (9th Cir. 2004) (due process violation where the IJ "erroneously..." informed the defendant that he was ineligible for relief from deportation because the IJ "believed, incorrectly, that ... [defendant's] conviction...constituted a conviction of [an]...aggravated felony...for purposes of deportation law."). *Cf. United States v. Meza-Corrales,* 2006 WL 507701 (E.D. Wash. Mar. 1, 2006) (because the record before the IJ did not conclusively establish that defendant had been convicted of an aggravated felony under the INA, defendant's deportation proceedings were defective under the Due Process Clause).  The deportation officer's determination that a non-U.S. citizen stands convicted of an aggravated felony is tantamount to that same decision by an immigration judge and the consequences of such determination, when it is mistaken, must be subject to the same standards.

Herein, the deportation officer's mistaken finding that Defendant was an aggravated felon and, thus, did not qualify for voluntary departure, in turn, resulted in Defendant not being informed that he was eligible for such relief when the record contained an inference to the contrary in light of *Aguila-Montes de Oca I.* Herein, the deportation officer's Final Administrative Order was not based on clear, convincing and unequivocal evidence of deportability. 8 CFR §§ 238.1(d)(1) and (d)(2)(i), 1238.1(d)(1), d(2)(i).

Because Defendant was removed under expedited procedures, he did not appear before an IJ and, thus, he did not have recourse to an administrative appeal to the Board of Immigration Affairs. However, he was informed of special procedures for challenging expedited removal. *See United States v. Santiago,* 447 F.3d 1015, 1019 (7th Cir. 2006) (recognizing that expedited removal procedure did not afford administrative appeal to BIA but did provide for other administrative means to challenge removal). Specifically, the Notice of Intent and the Certificate of Service signed by Defendant, apprised him of his right to examine the Government's evidence, his right to rebut the charge that he was convicted of an aggravated felony, and his right to petition for judicial review. (Defense Exhibit 26). Defendant checked the box indicating that he "waived his right to rebut and contest the...charges." (Defense Exhibit 26).

Defendant opines by affidavit that he was rebuked and discouraged by DO Ellis into waiving his right to contest the ICE hearing officer's Notice of Intent and/or to request a withholding of removal. (Defense Exhibit 30). This Court, as the trier of fact regarding the circumstances under which Defendant waived his right to contest the Notice of Intent or his right to petition for judicial review, is not bound by Defendant's affidavit alone. *See United States v. Selby,* 557 F.3d 968, 876 (9th Cir. 2009) ("We have held that '[a] trier of fact is not compelled to accept and believe the self-serving stories of vitally interested defendants.") (*quoting United States v. Cisneros*, 448 F.2d 298, 305 (9th Cir. 1971)). However, the totality of the circumstances regarding the record before the Court and Defendant's affidavit indicates that Defendant asked for a hearing before an immigration judge and was denied; and was told by DO Ellis that his appeal was futile based upon a mistaken belief that his

conviction was for an aggravated felony which, in turn, resulted in Defendant never being informed that he was eligible for voluntary removal.

If Defendant "were eligible for voluntary departure under section 1229c(a),...he would be 'exempted from the exhaustion requirement...'" because he was not informed that he was eligible for relief from removal. *Ortiz-Lopez,* 385 F.3d at 1204 n.2 (*quoting Ubaldo-Figueroa,* 364 F.3d at 1049). Waiver of administrative remedies, such as appeal, must be considered and intelligent. *Id.* The Ninth Circuit does not consider a defendant's waiver of his right to administratively "'appeal his deportation order to be considered and intelligent when the record contains an inference that the [defendant] is eligible for relief from deportation, but the [IJ] fails to advise the alien of his possibility and give him the opportunity to develop the issue.'" *Id.* (*quoting Ubaldo-Figueroa,* 364 F.3d at 1049). *See also United States v. Leon-Paz,* 340 F.3d 1003, 1005 (9th Cir. 2003) (Defendant "did waive his right to appeal after the IJ told him that he was not eligible for relief from removal. But the waiver cannot have been valid if the record contains an inference that he was eligible for relief, but the IJ misadvised him to the contrary.") (internal quotations and citation omitted).

Under the circumstances of the instant case, although Defendant did not administratively exhaust his administrative remedies, he is exempted from the exhaustion bar because his waiver of his right to administratively exhaust was not sufficiently considered and intelligent under the Due Process Clause of the Fifth Amendment. *See Ortiz-Lopez,* 385 F.3d at 1204 & n.2. *See also Pallares-Galan,* 359 F.3d at 1096 (due process violation where IJ failed to inform defendant that he was eligible for relief from deportation based on IJ's mistaken belief that defendant was an aggravated felon for purposes of deportation law); *Lopez-Menera,* 542 F.Supp.2d 1025 (IJ's failure to inform defendant of his eligibility for voluntary departure violated defendant's due process rights).

**B.      Denial of Judicial Review.**

A non-U.S. citizen may petition the Ninth Circuit Court of Appeals for judicial review within 30 calendar days after the date of the Final Administrative Removal Order. INA §242(b)(1); 8 U.S.C. §1252(b)(1); *see Flores-Ledezma v. Gonzales,* 415 F.3d 375 (5th Cir.

2005).

Title 8 U.S.C. §1252 provides, in pertinent part, for the exclusive means of review:

> Notwithstanding any other provision of law (statutory or non-statutory), ... , *a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review* of an order of removal entered or issued under any provision of this chapter, ....

8 U.S.C. §1252(a)(5)(emphasis added). Title 8 U.S.C. §1252 further provides that:

> Nothing in [the provisions that limit or eliminate judicial review] shall be construed as precluding review of constitutional claims or *questions of law* raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. §1252(a)(2)(D)(emphasis added).

Whether a crime constitutes an aggravated felony is a question of law. *Ortiz-Magana v. Mukasey*, 542 F.3d 653 (9th Cir. 2008). Consequently, herein that question is reviewable by the Ninth Circuit Court of Appeals, provided that the petition for judicial review is filed no later than 30 days after the date of the Final Administrative Removal Order. *See* 8 U.S.C. §1252(b)(1). A petition for judicial review does not automatically stay an alien's removal pending disposition of the appeal and the alien must otherwise file a motion for a stay. *Rivera v. Mukasey*, 508 F.3d 1271, 1277-78 (9th Cir. 2007); *see also* INA §242(b)(3)(B); 8 U.S.C. §1252(b)(3)(B); *Bejar v. Ashcroft*, 324 F.3d 127 (3rd Cir. 2003).

Defendant was advised of his right to remain in the United States for fourteen calendar days to file a petition for judicial review with the Ninth Circuit Court of Appeals, or alternatively, waive his right to remain in the United States for the fourteen-day period and, instead, file a petition for judicial review with the Ninth Circuit Court of Appeals within thirty calendar days of the date of the final order of removal. (*Id.*). Instead of invoking that right, Defendant signed the Certificate of Service. By signing the Certificate of Service, Defendant conceded that he was deportable and not eligible for any form of relief from removal, and that he did not wish to remain in the United States for fourteen days in order to apply for judicial review. (*Id.*); *see also* INA §242(b)(1); 8 U.S.C. §1252(b)(1).

1    Defendant did not file an appeal within thirty days after the Final Administrative
2    Removal Order was entered.

3    As set forth *supra,* at II.A., where the record contains an inference that the defendant
4    is eligible for relief from deportation, the IJ must advise him of this possibility and give him
5    the opportunity to develop the record.  In such a case, the failure to advise the defendant of
6    his right to apply for relief from deportation constitutes a due process violation that deprives
7    the defendant of judicial review because "'an alien who is not made aware that he has a right
8    to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not
9    advised of that right." *Arrieta,* 224 F.3d at 1079.  *See also Ortiz-Lopez,* 385 F.3d at 1204 n.2
10   (following *Arrieta* to hold that defendant who was not advised of eligibility for voluntary
11   departure was "deprived of the right to judicial review..."); *Lopez-Menera,* 542 F.Supp.2d
12   at 1029 ("Because the IJ failed to inform defendant that he could apply for [voluntary
13   departure],...defendant's waiver of his right to appeal was invalid.  As such, the Court holds
14   that defendant has satisfied the exhaustion and deprivation requirements in section
15   1326(d).").  Although Defendant herein was advised of his right to seek judicial review,
16   which he waived, the failure to inform him of his eligibility to seek voluntary departure
17   rendered such waiver invlaid.  *See Id.*

18   ### C.     Fundamental Unfairness

19   Defendant must demonstrate conjunctively that: (1) his due process rights were
20   violated by defects in his underlying deportation proceeding, *and* (2) he suffered prejudice
21   as a result of the defects. *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir.
22   1998), *overruled on other grounds as discussed in United States v. Ballesteros-Ruiz,* 319
23   F.3d 1101, 1105 (9th Cir. 2003). As set forth *supra,* at II.A, and II.B., Defendant has
24   demonstrated a due process violation in the underlying removal proceeding.

25   To establish prejudice, Defendant need not show that he actually would have been
26   granted relief. *Ubaldo-Figueroa,* 364 F.3d at 1050.  Instead, he must only show that he had
27   a "plausible" ground for relief from deportation. (*Id.*).  Voluntary departure is a privilege
28   created by statute and permission to voluntarily depart is a matter within the discretion of the

IJ.  8 U.S.C. §1229c(a)(1); *Munoz v. Ashcroft,* 339 F.3d 950, 954 (9th Cir. 2003).   The determination whether to grant voluntary departure requires weighing both favorable and unfavorable factors "by evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively." *Campos-Granillo v. INS,* 12 F.3d 849, 852 (9th Cir. 1994) (internal quotation marks and citation omitted). Favorable factors include: family ties in the United States; residence of long duration, particularly if residence began at a young age; hardship if relief is not granted; service in the United States armed services; history of employment; existence of business or property ties; evidence of value or service to the community; proof of rehabilitation if a criminal record exists; and other evidence attesting to good character.   *Id.* at 852 n.8.   Unfavorable factors include: nature and circumstances of the grounds for removal; additional violation(s) of immigration law; the existence, seriousness, and recency of any criminal record; and other evidence of bad character.  *Id.*  Defendant bears the burden of showing that there were "plausible grounds" that he would have received discretionary relief.  *See Arce-Hernandez,* 163 F.3d at 563.

Mr. Sultan, defense expert witness, has testified to the myriad of favorable factors supporting the grant of voluntary departure including: (1) no other criminal history in Defendant's background; (2) Defendant had been in the United States since he was eight months old; (3) Defendant had attended schools in the United States through the eleventh grade and obtained a GED; (4) Defendant's entire family lives in the United States; (5) Defendant's sentence had been suspended, resulting in no incarceration and thus he was not a danger to the community; (6) Defendant's self-report to ICE evidenced good faith that he was not a flight risk; and (7) because Defendant was contemplating marriage to his U.S. citizen girlfriend, whether married in or outside of the United States, Defendant could be sponsored by her for admission into the United States under INA § 212(h) and 8 U.S.C. § 1182(h). (*Id.* at pp. 14-15, 33-34).  The sole unfavorable factor evident on the instant record is Defendant's state conviction in 2009 for a gross misdemeanor.  Upon consideration of all factors, separately and cumulatively, the record supports  the conclusion that the favorable factors considerably outweigh the unfavorable factor.

1   On the instant record, it is reasonably likely that Defendant would have requested

2   voluntary departure had he been properly advised during his removal proceeding.  Moreover,

3   the record also supports the conclusion that Defendant had a plausible claim for voluntary

4   departure and, thus, he has established prejudice from not having been informed of his

5   eligibility for such relief.

6   **III. CONCLUSION**

7   Because failure to inform Defendant of his eligibility for voluntary departure violated

8   his due process rights: (1) Defendant is exempted from the requirement of 8 U.S.C. §

9   1326(d)(1); and (2) he has shown that he was improperly deprived of an opportunity for

10  judicial review as required by 8 U.S.C. §1326(d)(2).  Further, Defendant has also established

11  that the order of removal was fundamentally unfair under 8 U.S.C. § 1326(d)(3). Therefore,

12  Defendant is entitled dismissal of the Indictment in this matter.

13  **IV. RECOMMENDATION**

14  For the foregoing reasons, the Magistrate Judge recommends that the District Court

15  grant Defendant's Motion to Dismiss Indictment (Doc. 15).

16  Pursuant to 28 U.S.C. §636(b), Rule 59 of the Federal Rules of Criminal Procedure,

17  LRCrim 12.1 and LRCiv 7.2(e)(3), any party may serve and file written objections within

18  fourteen (14) days after being served with a copy of this Report and Recommendation.  If

19  objections are filed, the parties should use the following case number: **CR 10-01350-TUC-**

20  **JMR**.

21  Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver

22  of the right to review.

23  DATED this 8th day of December, 2010.

25  _____

Héctor C. Estrada
United States Magistrate Judge